UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

| | | |
|---|---|---|
| ARCHIE EVANS, # 142510, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:08-cv-701 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| CINDI S. CURTIN, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. After a jury trial in the Saginaw County Circuit Court, petitioner was convicted of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(e), assault with intent to commit murder, MICH. COMP. LAWS § 750.83, kidnaping, MICH. COMP. LAWS § 750.349, armed robbery, MICH. COMP. LAWS § 750.529, and carrying a dangerous weapon with unlawful intent, MICH. COMP. LAWS § 750.226. On September 4, 2002, the trial court sentenced petitioner as a fourth habitual offender to concurrent terms of 75-to-125 years on all counts, except the weapons charge, for which he was sentenced to a term of 6-1/3-to-10 years. As petitioner was on parole at the time of the offenses, these sentences were made consecutive to his previous, unexpired prison sentence. Petitioner's conviction and sentence were affirmed on direct review, and the Michigan courts denied a subsequent motion for post-judgment relief.

The *pro se* habeas corpus petition raises the following eight claims for relief:

I.      Defendant was denied his due process right to a fair trial when Carol Moten's testimony was admitted under 404(b) for no proper purpose, the evidence was more prejudicial than probative, and it constituted a propensity argument.

II.     Defendant's assault with intent to murder conviction was based upon insufficient evidence, remand for entry of an assault GBH conviction is appropriate; because the guidelines are affected, a general re-sentencing is required.

III.    Defendant should have been granted an evidentiary hearing to examine whether he received effective assistance under the Sixth Amendment of the United States Constitution and Michigan's Constitution for the following reasons (1) failure to obtain records, (2) failure to call witnesses, (3) failure to request severance, (4) failure to make an opening consistent with his client's testimony, (5) failure to provide notice under the rape shield statute, and (6) failure to object to the prosecution's reference to a 1980 conviction suppressed *in liminie* [sic].

IV.     Defendant Evans' convictions and sentences must be reversed for new trial since he was constructively denied his fundamental protected Sixth Amendment right to the effective assistance of counsel where prior to trial defense counsel was not only totally absent during pretrial preparations, but he also failed to communicate and consult with defendant in a meaningful and constitutionally adequate way during this critical stage of the proceedings thereby denying defendant's right to a fair trial and the fourteenth amendment right to due process of law.

V.      Defendant Evans is entitled to a new trial, pursuant to MCL 770.1; MSA 28.1098, and MCR 6.431(B) because the verdict is against the great weight of the evidence or alternatively, because a new trial would be in the interest of justice.

VI.     Defendant is entitled to a reversal of his convictions and sentences and remand for new trial where appellate counsel's failure to raise significant and obvious core Sixth Amendment issues which would have likely resulted in reversal and instead raised inferior appellate issues which were without merit deprived defendant the "effective" assistance of counsel on direct appeal.

VII.    Defendant Evans was prejudiced by each of the errors listed above. Moreover, he has identified an accumulation of errors such that his trial proceeding[s] were fundamentally unfair, thereby violating his Sixth Amendment right to due process of law. As such, this court should find that the cumulative of the constitutional egregious errors necessitates reversal.

VIII.    The prosecutor's evidence presented at trial was insufficient to sustain the finding of guilt beyond reasonable doubt on the offense of criminal sexual conduct as to defendant Evans' conviction against Brenda Nuby.

(Petition, docket # 1, attachment D).  The first three claims were raised on direct appeal; grounds IV through VIII were raised for the first time in petitioner's motion for relief from judgment. Respondent has filed an answer to the petition, supported by the extensive trial and appellate records. Respondent asserts that the first three grounds for relief are meritless and that the remaining grounds should be denied because of petitioner's procedural default in failing to raise them on direct appeal. After review of the record and the submissions of the parties, I conclude that all of petitioner's claims are meritless and recommend that the petition be denied.

## Proposed Findings of Fact

### I.    Pretrial Proceedings

The state-court prosecution arose from assaults committed on two women in October of 2001.  The Michigan Court of Appeals summarized the facts supporting the prosecution as follows:

The instant case involves assault that defendant committed on two women. Brenda Nuby had an ongoing relationship with defendant.  On October 17, 2001, Ms. Nuby agreed to have sexual intercourse with defendant but refused his request for oral sex.  When she refused, Ms. Nuby claimed that defendant slapped her, placed a butcher knife to her neck, and forced her to perform oral sex on him.  The following day, Ms. Nuby drove defendant to the Family Independence Agency building and dropped him off.

Kimberlee Wicks testified that on October 18, 2001, she took a bus to the FIA to get medical insurance.  While waiting for her appointment, Ms. Wicks went to a deli across the street and then to the Bearinger Building to see a friend at Ghetto Records.  After discovering that the Ghetto Records office was closed, Ms. Wicks stepped back onto the elevator and noticed defendant in the elevator.  When the elevator door opened on the first floor, she claimed that defendant pulled her back

into the elevator, put his arm around her neck, held a knife to her throat and took her to the fifth floor. She stated that defendant threatened to kill her if she screamed and then choked her until she lost consciousness. Ms. Wicks subsequently awoke naked, laying [sic] in a closet safe, with blood coming out of her head, and the money in her purse gone. The examining physician testified that Ms. Wicks' injuries were consistent with strangulation and being struck by a fist.

Defendant denied pulling a knife on Ms. Nuby and claimed that she did not perform oral sex on him. He further claimed that he was at the Bearinger Building smoking drugs when he met Ms. Wicks. According to defendant, Ms. Wicks was asking about drugs and offered him sex for money or drugs. Defendant denied hitting, strangling, or having sex with Ms. Wicks. He further claimed that he never possessed a knife.

*People v. Evans*, No. 244034, 2004 WL 243418, at * 1 (Mich. Ct. App. Feb. 10, 2004). The 70th

Judicial District Court conducted a preliminary examination on November 7 and 9, 2001. (*See*

Transcripts, docket #s 18, 19). The court heard testimony from eight witnesses, including both

victims. At the conclusion of the two-day preliminary hearing, the district judge bound petitioner

over for trial on all charges noted above.

On April 15, 2002, defense counsel argued two motions in the circuit court: a motion

to adjourn the trial and a motion *in limine* to exclude certain "other acts" testimony under Mich. R.

Evid. 404(b). The court granted the motion to adjourn, but postponed proceedings on the motion

*in limine* until a later date. (Hearing Transcript, docket # 21).

On June 3, 2002, the day before trial, the court conducted further proceedings on the

motion *in limine*. (Transcript, docket # 20). The subject matter of the motion was the prosecution's

notice of intent to adduce evidence of two previous sexual assaults allegedly committed by

petitioner. Defendant argued that the incidents were inadmissible under Mich. R. Evid. 404(b),

while the prosecution asserted that they were admissible under one or more of the provisions of Rule

404(b)(1). At the outset of the hearing, Circuit Judge William Crane expressed his tentative

conclusion that a 1980 incident was not "sufficiently similar" to show a similar method or scheme under the rule. (Tr., 3). The court indicated its tentative decision to allow admission of a 2001 verdict, which pertained to a crime more similar to the crimes charged. Counsel then presented argument, but the court did not change its tentative ruling. On the opening morning of trial, counsel again addressed the motion in limine. (TT I at 3-7, docket # 43). The court reiterated its ruling that the 2001 event involving alleged victim Carol Moten bore enough similarity to the assault against Ms. Wicks to be admissible under Mich. R. Evid. 404(b), but that the 1980 incident would be excluded, at least from the prosecution's case-in-chief. The court left open the possibility that the earlier incident might be admissible in rebuttal. Defense counsel asked for a limiting instruction, and the court indicated a willingness to deliver one. (*Id.*, 7-8). The remainder of the first day of trial was devoted to jury selection.

## II.     Trial

Jury trial commenced on June 4, 2002, covering nine trial days. The prosecution's principal witness with regard to the charges involving Brenda Nuby was Ms. Nuby herself. At the time of the assault on October 17, 2001, Ms. Nuby was 49 years of age. She was formerly petitioner's girlfriend. (TT IV, 51-56, docket # 22). On October 17, 2001, petitioner pressured Nuby into picking him up and persuaded him to take her home for sex. Petitioner demanded oral sex, and when Nuby refused, he held a butcher knife to her throat and forced her to perform oral sex. (TT IV, 8-11, docket # 35).

The prosecution called Carol Moten as a Rule 404(b) witness, pursuant to the court's pretrial ruling. Moten testified concerning her violent rape at the hands of petitioner in 2001. Moten

testified that petitioner beat and choked her, and held a knife to her throat in the course of the assault. (TT IV, 44-51).

The prosecution's principal witness with regard to the assault on Kimberlee Wicks was Ms. Wicks herself, a 21-year-old woman. On October 18, 2001, she was traveling to the State Building by bus to get medical insurance from the FIA. (TT II, 130-32). Later in the day, she went to the Berringer Building, where she encountered petitioner inside an elevator. She testified in detail to a physical and sexual assault, during which petitioner held a knife against her neck, dragged her down a hallway, and took her into a room. (TT III, 16-21). Petitioner told her not to scream or he was "gonna kill" her, threatening her with the knife. (TT II, 143-44). Once inside the room, petitioner dropped the knife and strangled Wicks until she passed out. (TT III, 21). She awoke naked in a small room. Upon awaking, she felt blood coming from her head, and she vomited. Her arm was numb. She managed to dress herself and then attempted to leave. At that point, she realized that the room she was in was a safe. The door was not locked, so she was able to leave and to seek help at a barbershop in the same building. Upon checking her purse, she realized all of her money was gone. (TT II, 147-52).

Wicks sought help in a barbershop. The police were called. Officer Jason Bell testified that when he arrived at the barbershop, he observed the victim sobbing and crying, with her face in her hands. Her face was swollen, and she had two black eyes. (TT II, 96-97). The officer observed that her hair was "soaked in blood." (*Id.*, 98). EMS arrived and took Wicks to the hospital by ambulance. She was in the hospital for a week. (TT II, 155).

The prosecution called Vondell Simpson, an employee at the barbershop, who testified that on October 18, 2001, Ms. Wicks appeared at the door of the barbershop with blood on her neck and her face. "She told me that she had been raped." (TT III, 173-75).

The prosecution called Dr. Richard Ross, the emergency room physician who treated Kimberlee Wicks on October 18, 2001. (TT II, 55-57). Dr. Ross established the extent of the victim's injuries. She sustained a neurological brachial plexus injury resulting from a violent pull on her left arm (*Id.*, 71, 89), bruises and abrasions around her face and head, petechial hemorrhaging evidencing strangulation (*Id.*, 65-67), a hand pattern injury on her neck, also consistent with strangulation (*Id.*, 67-68), and lacerations consistent with blunt force trauma (*Id.*, 69). The doctor did not perform a pelvic examination or any other test to determine whether Ms. Wicks had been raped. (*Id.*, 85-86).

At the beginning of the fifth day of trial, defense counsel asked for an off-the-record hearing, at which he enlisted the court's aid in procuring the attendance at trial of Martin Jankowsky, petitioner's parole officer. Defense counsel informed the court that petitioner insisted that his parole officer should be called as a witness, even though the officer's testimony "would certainly show that my client was on parole at the time of the events, which we have meticulously kept out of this trial." (TT V, 4-5). The court agreed to assist counsel in the manner requested. Defense counsel then informed the court that petitioner was dissatisfied with his representation, because counsel had not filed "several motions" that petitioner thought should have been filed. (*Id.*, 8). The court put petitioner under oath to discuss this and other issues. Petitioner indicated that he did not want counsel to be removed but was dissatisfied because "I ain't seen nothing done legally." (*Id.*, 9). Counsel sought leave to withdraw on the basis of petitioner's dissatisfaction. The court remarked,

however, that it did not perceive anything that should have been done that had not yet been done. (*Id.*, 10). The motion was therefore denied. During the colloquy, defendant made it clear that he wished to call a witness named Jesse Stubs. Counsel stated on the record that he made the decision that Mr. Stubs should not be called, despite petitioner's disagreement. (*Id.*, 12). The court, defense counsel, and petitioner then had a long discussion about petitioner's decision to testify, during which petitioner stated that he chose to testify because he had nothing to hide. (*Id.*, 12-16).

The prosecution called a number of eyewitnesses who placed petitioner on the fifth floor of the Bearinger Building around the time of the assault. Steven Barker, who knew petitioner from previous employment, saw him at the building at about 1:00 p.m. (TT III, 101-03). Antoine Ringold, who also knew petitioner from previous acquaintance, saw him in the building and spoke to him about possible employment on that day. (TT III, 181-84). Ringold testified that petitioner was not "acting right" and was sweating. (TT III, 188-90, 199). Ringold saw petitioner, in the Bearinger Building, both before and after the time of the attack on Ms. Wicks. (*Id.*, 187-88). In fact, petitioner was standing outside the building when the police arrived. (*Id.*, 189-91).

After the prosecution rested, petitioner called his parole agent, Marty Jankowsky. Jankowsky testified that petitioner had served sixteen years in prison for armed robbery and possession of a firearm. He was paroled on June 29, 2000, and placed on "maximum supervision." (TT V, 61-64, 70). On the day of the Wicks assault (October 18, 2001), petitioner reported in-person on that day to Jankowsky at around 3:45 p.m. (*Id.*, 66-67).

Petitioner testified in his own defense. He began by saying that he was on parole at the time for an armed robbery conviction. (TT V, 87). He gave his own version of the events involving both Brenda Nuby and Kimberly Wicks. With regard to the events of October 17, 2001,

he testified that he had seen Nuby the day before, and they agreed to meet on the 17th. She picked him up because of his rheumatoid arthritis, they had breakfast together, then went back to her home. (TT V, 87-89). At around 10:00 a.m., they had "regular sex," and he performed oral sex on her, but never demanded oral sex in return. Petitioner testified that he could not figure out why Nuby was claiming a sexual assault, but that she had been a user of crack cocaine. He denied that she ever performed oral sex on him, denied that he held a knife to her throat, and denied ever threatening her. (TT V, 90-95).

With regard to the events of October 18, 2001, petitioner admitted that he was present at the Bearinger Building that day. He admitted seeing Antoine Ringold, whom he described as a drug dealer. (TT V, 96-98). Petitioner volunteered that he was a drug addict and said he was there to buy drugs from Ringold. (*Id.*, 97-98). He also admitted seeing Kimberly Wicks and, indeed, admitted being in the room in which Wicks claimed to have been assaulted. He testified, however, that he went to that room in the Bearinger Building in order to smoke drugs. After leaving the room, he again saw Ms. Wicks. (*Id.*, 98). He testified that Wicks asked him about getting some drugs. He went downstairs and purchased a piece of crack cocaine, but Wicks was gone by that time. Petitioner then used the drugs himself. Afterwards, he walked from the Bearinger Building to the International Center to buy a pop in the deli there. He again saw Ms. Wicks, sitting in one of the booths in the deli. She told him that she wanted to trade sex for drugs. He claimed that she was not appealing to him, so he refused. He denied hitting her, molesting her in any way, or possessing a knife on that day. (TT V, 97-105). Summarizing his testimony, petitioner said with regard to Ms. Nuby that he had "consensual sex" with her and with regard to Ms. Wicks that he "never had sex with this little child." (*Id.*, 105).

In the course of denying that he had assaulted Ms. Wicks, petitioner testified that he "couldn't hurt nobody like that in my life if it depended on it." (TT V, 153). The trial court ruled that this volunteered testimony opened the door to proof of petitioner's conviction in 1980 for sexual assault on Sally Jackson, the conviction that the court had previously excluded from evidence for lack of similarity. The assistant prosecutor confronted him with the previous conviction, which involved allegations that petitioner had choked the victim and forced her to have sex with him. Petitioner denied that he was guilty, despite his plea, because he "took a plea bargain." (*Id.*, 153-54).

After the close of proofs, the jury received final instructions. The jury returned a verdict on June 14, 2002, finding petitioner guilty of first-degree criminal sexual conduct with regard to Brenda Nuby, kidnaping, armed robbery, and assault-with-intent-to-murder with regard to Kimberly Wicks, and carrying a dangerous weapon with unlawful intent. The jury acquitted petitioner on the charge of first-degree criminal sexual conduct with regard to Kimberly Wicks. (TT VIII, 5-7, docket # 25).

### III.    Post-Trial Proceedings

Petitioner and counsel appeared before Judge William Crane on September 4, 2002, for sentencing. (Sentencing Transcript (ST), docket # 26). At the outset of the proceedings, the court noted that petitioner was being sentenced as a fourth habitual felony offender. (ST, 3).[1] The court imposed sentences of 900 months to 25 years for the kidnaping, armed robbery, assault, and criminal sexual conduct convictions. The conviction for the weapons charge resulted in a sentence

---

[1] Under Michigan law, petitioner's status as a fourth habitual offender increased the maximum penalties for his kidnaping, criminal sexual conduct, and assault convictions to life imprisonment, or any lesser term. *See* MICH. COMP. LAWS § 769.12(1)(b).

of 76-to-120 months.  All the foregoing sentences were to be served concurrently, but consecutively to the 10-to-30-year prison sentence for which petitioner was on parole at the time of the crimes. (ST, 6-7).

After petitioner filed a notice of appeal, his appellate attorney filed post-conviction motions, as allowed by Michigan law.  The motions comprehended the following issues:

- A request for resentencing on account of alleged miscalculations of the state sentencing guideline;

- A motion to set aside the verdict on the assault with intent to murder conviction, on the ground that the evidence, although sufficient to show assault with intent to commit great bodily harm, did not show an intent to kill; and

- A request for an evidentiary hearing on the issue of ineffective assistance of counsel. The motion raised a number of grounds arising from acts and omissions of plaintiff's trial attorney.  Among other issues raised, appellate counsel argued:  (1) trial counsel's opening statement was inconsistent with petitioner's testimony, in that the statement admitted that petitioner had sexual relations with Kimberly Wicks inside the Bearinger Building by consent, and that he thereafter assaulted her but only in self-defense. (2) Counsel's failure to provide notice under the Michigan Rape Shield Law of an intent to introduce evidence that petitioner and alleged victim Brenda Nuby regularly had "rough sex" in the past.  (3) Trial counsel's failure to move for severance.

The court heard argument on petitioner's post-trial motions on April 28, 2003. (Motion Hearing (MT), docket # 27).  Appellate counsel was given an opportunity to argue each

motion thoroughly. At the end of the proceedings, the court denied each motion, making brief oral

findings. (MT, 29-31). The court considered any error then raised by appellate counsel to have been

harmless, in light of the overwhelming evidence of guilt. With regard to the claim that trial counsel

had been ineffective for failure to give notice of alleged exculpatory evidence under the Rape Shield

Law, the court noted the lack of affidavits that might establish exactly what the omitted testimony

was. (*Id.*, 31). All requests for relief were denied.

### IV. Appeal as of Right

Petitioner, represented by appellate counsel, appealed as of right to the Michigan

Court of Appeals. The appellate brief raised three allegations of error:

I. DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL WHEN CAROL MOTEN'S TESTIMONY WAS ADMITTED UNDER 404(B) FOR NO PROPER PURPOSE. THE EVIDENCE WAS MORE PREJUDICIAL THAN PROBATIVE, AND IT CONSTITUTED A PROPENSITY ARGUMENT.

II. DEFENDANT'S ASSAULT WITH INTENT TO MURDER CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE. REMAND FOR ENTRY OF AN ASSAULT GBH CONVICTION IS APPROPRIATE. BECAUSE THE GUIDELINES ARE EFFECTED, RE-SENTENCING A GENERAL RE-SENTENCING IS REQUIRED.

III. DEFENDANT SHOULD HAVE BEEN GRANTED AN EVIDENTIARY HEARING TO EXAMINE WHETHER HE RECEIVED EFFECTIVE ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND MICHIGAN'S CONSTITUTION, FOR THE FOLLOWING REASONS: (i) FAILURE TO OBTAIN RECORDS; (ii) FAILURE TO CALL WITNESSES; (iii) FAILURE TO REQUEST SEVERANCE; (iv) FAILURE TO MAKE AN OPENING CONSISTENT WITH HIS CLIENT'S TESTIMONY; (v) FAILURE TO PROVIDE NOTICE UNDER THE RAPE SHIELD STATUTE, AND (vi) FAILURE TO OBJECT TO THE PROSECUTION'S REFERENCE TO A 1980 CONVICTION SUPPRESSED IN LIMINE.

(Defendant-Appellant's Brief at vi, docket # 28).

A panel of the Michigan Court of Appeals issued an unpublished opinion on February 10, 2004, rejecting all appellate issues and affirming the sentence and conviction. *People v. Evans*, No. 244034, 2004 WL 243418 (Mich. Ct. App. Feb. 10, 2004). The court first addressed the contention that the trial court abused its discretion by introducing evidence of other sexual assaults committed by petitioner as "other bad acts" evidence under Michigan Evidence Rule 404(b). Addressing the issue under state law only, the court determined that the evidence was admitted for a permissible purpose and that the trial court did not abuse its discretion. *Id.* at * 2. The court then addressed petitioner's challenge to the sufficiency of the evidence to sustain a guilty verdict on petitioner's conviction for assault on Ms. Wicks with intent to commit murder. Petitioner's appellate brief had challenged the sufficiency of the evidence only with regard to the mental element of the crime, arguing that the record did not sufficiently establish an intent to commit murder. The court noted that petitioner held a knife to Ms. Wicks' throat and threatened to kill her and that he choked her into unconsciousness when she tried to escape. "Viewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find that defendant was guilty of assault with intent to commit murder." *Id.*

The appellate court next addressed plaintiff's claims of ineffective assistance of counsel. It first took up the question whether the trial court improperly refused to grant an evidentiary hearing. The court upheld this refusal, citing the lack of evidence to establish a factual dispute requiring further development. *Id.* The court then rejected petitioner's claim that defense counsel was ineffective for failing to obtain medical records showing that plaintiff suffered from arthritis or for not calling exculpatory witnesses. The court noted that testimony was indeed

presented to the jury concerning petitioner's medical condition. With regard to the pretermitted witnesses, the court noted a lack of evidence showing that these witnesses would have affected the outcome of the proceeding. *Id.* at * 3. The court also rejected the argument that counsel was ineffective for failing to request a severance of the two trials, finding that joinder of the two charges was proper under state law and that an objection would have been futile. The court next rejected the contention that counsel was ineffective because his opening statement conflicted with defendant's testimony, finding that defendant had not demonstrated that the result of the proceeding would have been different had counsel delivered a different opening statement. The court also noted that the trial court appropriately instructed the jury concerning the weight to be given to arguments of counsel, which are not evidence under state law. The court also rejected petitioner's criticism of counsel for failing to provide notice, as required by the Michigan Rape Shield Statute, of an intent to show previous sexual contact between petitioner and victim Nuby. The court again noted the lack of evidence supporting this claim. *Id.*

Finally, the court rejected petitioner's Sixth Amendment claim based on counsel's failure to object to the introduction of defendant's 1980 sexual assault conviction by the prosecution. The court relied on state law, which allows evidence of prior convictions to rebut specific statements of a testifying defendant. "Here, the 1980 conviction was admissible to rebut defendant's testimony that he had never hurt anybody like that in his life." *Id.* at * 4. The court noted that defense counsel was not required to raise meritless objections.

Petitioner sought leave to appeal to the Michigan Supreme Court. On October 20, 2004, the state Supreme Court entered a standard order denying review. (Supreme Court record, docket # 30).

## V.       Post-Conviction Motion

On October 24, 2005, petitioner filed a *pro se* motion for relief from judgment pursuant to Mich. Ct. R. 6.500.  The motion raised four claims: (1)  petitioner was deprived of the effective assistance of trial counsel arising from counsel's alleged failure to prepare or to communicate with petitioner before trial; (2) petitioner should be granted a new trial, because the verdict was against the great weight of the evidence; (3) petitioner was denied ineffective assistance of appellate counsel, who failed to raise "obvious core Sixth Amendment issues" on appeal; and (4) cumulative error.  (Motion for Relief From Judgment, docket # 1-2, ID#s 50-51).  Petitioner asserted a fifth claim in his brief in support of the motion:  "The prosecution's evidence presented at trial was insufficient to sustain the finding of guilt beyond a reasonable doubt on the offense of criminal sexual conduct as to defendant Evans' conviction against Brenda Nuby."  (docket # 1-2, ID# 87).

By opinion and order entered June 21, 2006, the circuit judge denied the motion for post-judgment relief.  The court found that many of petitioner's claims were foreclosed by the previous findings of the trial court in 2003 in response to petitioner's post-trial motion or from the findings of the Court of Appeals.  With regard to the new claims of ineffective assistance of counsel, the court found that petitioner's claims "are quite general in nature, lack any specificity, and fail to establish any link between claimed pretrial deficiencies and trial error."  The court rejected petitioner's challenge to the sufficiency of the evidence supporting his first-degree criminal sexual conduct conviction:  "As to the criminal sexual conduct charge, the court has reviewed those portions of the trial transcript related to that charge and finds sufficient evidence to support the jury conviction."  (6/21/06 Order, found in Michigan Court of Appeals record, docket # 29).  Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, which denied the

application by standard order entered October 23, 2007. (State Appellate record, docket # 29).

Petitioner sought discretionary review in the Michigan Supreme Court, which denied his application

by standard order entered April 28, 2008. (Supreme Court record, docket # 31).

Petitioner initiated the present habeas corpus proceeding on July 25, 2008. His *pro se* petition raises the eight claims set forth at pages 2 and 3 above. The first three claims were raised and rejected on direct appeal. The remaining claims were raised in his motion and brief seeking post-judgment relief.

## Applicable Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 130 S. Ct. 1855, 1862 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009);

*Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012)(*per curiam*). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;[2] or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010).

---

[2] Under this standard, a lower court must ground its decision on the "holdings" as opposed to the "dicta," of Supreme Court decisions as of the time of the relevant state-court decision. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court[.]' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. at 2155; *accord Marshall v. Rodgers*, 133 S. Ct. 1446, 1450-51 (2013) (*per curiam*).

**Discussion**

## I.    Evidence of Other Bad Acts

Petitioner's first habeas claim challenges the trial court's decision to allow evidence of his previous sexual assaults on other victims. On direct appeal, petitioner's counsel argued this claim both under state law and as a violation of petitioner's due-process rights. In support of the due-process argument, however, petitioner cited no federal authority analyzing this evidentiary claim under the Due Process Clause. Rather, counsel merely cited decisions of the Sixth Circuit Court of Appeals reviewing claims of evidentiary error raised on direct appeal from federal convictions.

As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotations omitted); *accord Moreland v. Bradshaw*, 669 F.3d 908, 924-25 (6th Cir. 2012); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if a petitioner is able to show

that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard. The admission of the similar sexual acts testimony pursuant to Michigan Rule of Evidence 404(b) violated no traditional and fundamental principle of justice. The United States Supreme Court has declined to hold that the admission of similar "other bad acts" evidence is so unfair that its admission violates fundamental concepts of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Accordingly, the state court's decision to admit the similar sexual acts testimony was neither contrary to nor an unreasonable application of Supreme Court precedent.

The admission of evidence of prior bad acts under Mich. R. Evid. 404(b) raises a pure question of state law, unreviewable on habeas corpus. The Supreme Court has never held that the introduction of such evidence, even if contrary to state evidence law, can support a claim of constitutional magnitude. In this case, the state courts found no violation of the state evidence rules, concluding that the evidence of previous sexual assaults was properly allowed. Thus, petitioner fails to satisfy the most basic prerequisite for habeas corpus relief under AEDPA -- a violation of a federal

right clearly established by the holdings of the Supreme Court.  His first claim for habeas corpus relief must therefore be denied.

## II.      Sufficiency of the Evidence To Support Assault Conviction

Petitioner's second claim, again raised on direct review, is that the evidence was insufficient to support the jury's verdict on the charge of assault with intent to murder.  Petitioner's appellate counsel challenged only the sufficiency of the evidence to establish the mental element of this offense, arguing that the matter should be remanded for the entry of a conviction on assault with intent to do great bodily harm, a lesser-included offense.  It is doubtful that this claim raises a matter of constitutional magnitude.  Michigan law defines several degrees of assault, differentiated only by the required mental state.  *See* MICH. COMP. LAWS §§ 750.82-.89.  Petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, which requires the specific intent to kill.  *See People v. Brown*, 703 N.W.2d 230, 235-37 (Mich. Ct. App. 2005).  It is generally punishable by imprisonment for life or any number of years.  Petitioner argues only that his mental state was insufficient to show intent to commit murder and that his conviction should be reduced to the lesser-included offense of assault with intent to do great bodily harm less than murder.  MICH. COMP. LAWS § 750.84.  This felony, generally punishable by up to ten years in prison, requires proof of an intent to commit great bodily harm, defined as serious injury of an aggravated nature.  *See Brown*, 703 N.W.2d at 147.

In the present case, however, petitioner was sentenced as a fourth habitual felony offender.  (*See* Sentencing Transcript, 3).  Petitioner's status as a fourth felony offender subjected him to a prison sentence of life, or any term of years, for his felony assault conviction, regardless of

the degree.  *See* MICH. COMP. LAWS § 769.12(1)(b).  Consequently, petitioner's second claim for

relief is without constitutional significance.  Whether petitioner intended to kill Ms. Wicks or merely

to subject her to great bodily harm, his conviction exposed him to a possible life sentence and

supported the sentence imposed by the trial judge.  A grant of habeas corpus relief as requested in

ground II -- merely reducing petitioner's conviction to assault with intent to do great bodily harm less

than murder -- would be of no legal or practical significance, as petitioner's sentence would remain

the same.

    Alternatively, I find that petitioner's challenge to the sufficiency of the evidence

supporting his conviction for assault with intent to commit murder is not meritorious.  A section

2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme

Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes

the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence,

and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*; *see Cavazos v. Smith*, 132

S. Ct. 2, 3-4 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the

jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").

Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v.

Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence

supporting the conviction, in the light most favorable to the prosecution, with specific reference to

the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Davis v. Lafler*,

658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim. Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587, 601-02 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534. "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.* "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was 'objectively unreasonable.'" *Parker v. Matthews*, 132 S. Ct. at 2152 (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (*per curiam*)).

In the present case, the Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting the federal standard. The court found that the evidence was sufficient to support the jury's verdict. The elements of assault with intent to commit murder are (1) an assault, coupled with (2) specific intent to kill, (3) which, if successful, would make the killing murder. *People v. Taylor*, 375 N.W.2d 1, 7 (Mich. 1985); *see Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). The intent to kill may be proven by inference from circumstantial evidence. *Warren*, 168 F.3d at 361. In finding the evidence sufficient to sustain the

conviction, the Michigan Court of Appeals focused on the facts, amply supported in the record, that petitioner held a knife to the throat of his victim and threatened to kill her, that he choked her into unconsciousness when she tried to escape, and that he left her inside a wall safe. "Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could find that defendant was guilty of assault with intent to commit murder." *Evans*, 2004 WL 243418, at * 2.

To the extent that ground II of the habeas petition alleges a claim of constitutional magnitude, the decision of the Michigan Court of Appeals easily passes scrutiny under the deferential AEDPA standard, as the appellate court applied the correct constitutional test, relied on facts amply supported in the record, and did not unreasonably apply clearly established constitutional law.

### III. Ineffective Assistance of Counsel

Petitioner's third claim for relief alleges a violation of his Sixth Amendment right to the effective assistance of counsel, arising from five alleged deficiencies. The trial court considered each of these claims of ineffective assistance of counsel in a post-judgment hearing conducted on April 28, 2003. (*See* Transcript, docket # 27). The trial judge found that any mistake by counsel was not prejudicial, in light of the overwhelming evidence of petitioner's guilt. With regard to the claim that trial counsel should have called witnesses or given notice of an intent to introduce allegedly exculpatory evidence under the Rape Shield Law, the trial court relied on the lack of affidavits establishing exactly what the omitted evidence or testimony would have been. (Tr., 31). On direct appeal, the Michigan Court of Appeals considered and rejected each claim on its merits and affirmed

the trial court's decision not to grant an evidentiary hearing, again relying on the lack of evidence to support petitioner's claims. "However, defendant has not presented any evidence, let alone substantial evidence, to support the claim that he was deprived of a substantial defense." *Evans*, 2004 WL 243418, at * 3.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the court's analysis of ineffective assistance of counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To establish ineffective assistance of counsel, "a defendant must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Premo v. Moore*, 131 S. Ct. 733, 739 (2011). Because of the high deference accorded state-court determinations by the AEDPA, establishing that counsel was ineffective, and therefore that petitioner was denied his right to counsel under the Sixth Amendment, is difficult. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices. *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S. Ct. at 788 (internal citations omitted).

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination

was unreasonable -- a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner's claims of ineffective assistance of counsel include five acts and omissions of his trial attorney. The Michigan Court of Appeals considered and rejected each claim of attorney error, which include the following:

Failure to Request Severance. Petitioner faults counsel for his failure to object to the joinder of the claims involving victim Nuby and those involving victim Wicks. Improper joinder does not, by itself, violate the federal Constitution. *United States v. Lane*, 474 U.S. 438, 446 n.8, 106 S. Ct. 725 (1986). Misjoinder rises "to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.* The Supreme Court has never held that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him. *See Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009). Any attorney error in this regard would have therefore involved a matter of state law. "[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore*, 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (citing MICH. CT. R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 492 N.W.2d 490, 495 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the

defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 524 N.W.2d 682, 689-90 (1994).

The Michigan Court of Appeals applied these principles in concluding that an objection by counsel to improper joinder would have been pointless. The court found that severance was not warranted under Michigan Court Rule 6.120(B) and that counsel was not required to advocate a meritless position. This court is bound by the state courts' decisions on matters of state law. As the Michigan Court of Appeals has authoritatively held that joinder was proper in this case, counsel cannot be deemed ineffective for failure to raise a meritless motion to sever.

Failure to Object to Prosecutor's Reference to a 1980 Conviction. As noted in the findings of fact, the trial judge suppressed *in limine* any reference to petitioner's 1980 conviction for sexual assault, finding that the incident underlying that conviction was not sufficiently similar to the events giving rise to the present criminal charge. (Transcript at 3, docket # 20). After petitioner testified, however, the court did allow him to be cross-examined on the basis of that conviction. On direct review, the Michigan Court of Appeals rejected a claim that counsel was ineffective for failure to object, finding that "evidence of prior convictions are [sic] admissible to rebut specific statements of a defendant who testifies at trial," citing state evidentiary law. *Evans*, 2004 WL 243418, at * 4. Because the previous conviction was clearly admissible under state law, counsel cannot be deemed ineffective for failing to object.

Failure to Obtain Records, Call Witnesses, or Provide Notice Under Rape Shield Statute. The next three alleged failures of trial counsel can be considered together. Petitioner's appellate counsel asserted that trial counsel had been ineffective for failing to call certain witnesses,

failure to obtain medical records concerning petitioner's arthritis, and failure to provide notice of an intent to present evidence that petitioner and Ms. Nuby had engaged in rough sex in the past. When these claims were presented to the circuit court on post-trial motion, the judge rejected them for lack of proof. (MT at 31, docket # 27). The court noted the lack of affidavits establishing exactly what the omitted evidence consisted of. On direct review, the Michigan Court of Appeals rejected these claims on the same basis, finding that petitioner had not presented any evidence showing the nature of the omitted testimony or medical records. *Evans*, 2004 WL 243418, at * 3.

The decision of the Michigan Court of Appeals easily passes scrutiny under the deferential AEDPA standard. The court applied the appropriate standard under *Strickland* and reasonably applied that standard to the facts of the case. Petitioner presented no evidence to the state trial court and Court of Appeals establishing the nature of the testimony or documentation that his attorney supposedly neglected to present. Because the state Court of Appeals decided this matter on its merits, the habeas corpus court is restricted to the record presented to the state Court of Appeals. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01 (2011). This is true even where, as here, a petitioner has sought an evidentiary hearing unsuccessfully in the state appellate system. *See Ballinger v. Prelesnik*, 709 F.3d 558, 561-62 (6th Cir. 2013).

When faced with the bare allegation that counsel failed to present relevant and exculpatory evidence, the state Court of Appeals acted reasonably in concluding that the claim was factually unsupported. There was no evidence before the appellate court to support a finding that defense counsel was objectively unreasonable for failing to present evidence, or that the outcome of this case might have been different had counsel done so. The decision of the Court of Appeals was objectively reasonable.

Erroneous Opening Statement. On direct appeal, petitioner argued that discrepancies between the opening statement of counsel and petitioner's own testimony amounted to the ineffective assistance of counsel. Plaintiff's appellate brief presented this argument in a single paragraph containing five sentences. (Defendant-Appellant's Brief on Appeal at 30-31, found in Court of Appeals Record, docket # 28). The appellate brief fails to analyze the possible impact of the discrepancies or to argue how petitioner could have been prejudiced. On direct review, the Michigan Court of Appeals rejected this claim for lack of a demonstration of prejudice. *Evans*, 2004 WL 243418, at * 3. The court noted that the jury had been specifically instructed that the lawyer's statements and arguments are not evidence. Petitioner presents no argument or authority tending to show that the conclusion of the Michigan Court of Appeals was objectively unreasonable or that the appellate court ruled contrary to clearly established Supreme Court authority in rejecting this vague and undeveloped appellate argument.

The decision of the Michigan Court of Appeals rejecting each of petitioner's claims of ineffective assistance of counsel, either for lack of proof or lack of demonstrated prejudice, easily withstands scrutiny under the deferential standard of the AEDPA.

## IV.    Ineffective Assistance of Counsel for Failure to Prepare

In his motion for relief from judgment filed in 2005, petitioner faulted his trial counsel for his alleged failure to prepare before trial or to communicate with petitioner. In her answer to the petition, respondent argues that this ground for relief is barred by the doctrine of procedural default, because petitioner should have raised this claim of ineffective assistance of counsel on direct appeal. (Answer at 12-17, docket # 14). The defense of procedural default is

possibly meritorious, but it is unnecessary in the context of this case to engage in the complicated analysis applicable to claims of procedural default. Both the Supreme Court and the Sixth Circuit have indicated that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008). In the present case, although grounds IV through VIII of the habeas corpus petition may be procedurally defaulted, they are also clearly meritless, so a detailed analysis of the procedural default issues is not warranted.

Petitioner's claim of ineffective assistance of counsel, arising from alleged pretrial deficiencies, was raised for the first time in petitioner's *pro se* motion for relief from judgment, filed in 2005. By written opinion and order issued June 21, 2006, the trial judge reviewed and rejected this claim on its merits. The court noted that "defendants' claims in this regard are quite general in nature, lack any specificity, and fail to establish any link between claimed pretrial deficiencies and trial error." (Order at 2, found in Michigan Court of Appeals Record, docket # 29). The trial court was certainly justified in reaching these conclusions, as petitioner's presentation to that court was devoid of any evidence concerning the acts and omissions of counsel during the pretrial period. By standard order entered October 23, 2007, the Michigan Court of Appeals denied leave to appeal from the trial court decision, and the Michigan Supreme Court likewise denied review. The last reasoned decision of the Michigan courts on this claim was that of the trial court, which rejected the claim for lack of evidence. Because the state trial court decided this matter on its merits, the habeas corpus court is restricted to the record presented to that court. *See Pinholster*, 131 S. Ct. at 1400-01. The evidentiary record presented by petitioner to the state trial court was nonexistent. Petitioner made

only vague allegations of attorney neglect during the pretrial period. Those allegations were too vague to support post-judgment relief in the state courts, and they are necessarily too insubstantial to support habeas corpus relief under the deferential AEDPA standard.

## V. Request For New Trial

Petitioner's next ground for relief is that he should be granted a new trial under Michigan law, because the verdict is against the great weight of the evidence or because a new trial would be in the interest of justice. This assertion does not state grounds for habeas corpus relief. In making a "weight of the evidence" argument, petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial. *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998). This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id.* at 133. Thus, this claim raises an issue of state law, for which habeas review is not available. Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) ("[I]t is only noncompliance with *federal* law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10-cv-1091, 2013 WL 1663919, at * 10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08-cv-642, 2011 WL 6938471, at * 15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not

cognizable on habeas review."). Petitioner's fifth claim fails to establish any basis for habeas corpus relief.

## VI.    Ineffective Assistance of Appellate Counsel

Petitioner's sixth claim for relief asserts the ineffective assistance of appellate counsel on petitioner's appeal of right. Petitioner asserts that his appellate counsel should have raised on appeal the ineffective assistance of trial counsel during the pretrial phase of the case. Claims of ineffective assistance of appellate counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *See Evitts v. Lucey*, 469 U.S. 387 (1985). Petitioner must prove (1) that appellate counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an unreliable or fundamentally unfair outcome. 466 U.S. at 687-88. In adjudicating the first prong of the standard, the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

Because the state circuit court found that petitioner's claim of ineffective assistance of appellate counsel was "meritless," its decision must be afforded deference under AEDPA. *See Harrington v. Richter*, 131 S. Ct. at 784; *Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012). To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698–99 (2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively

unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Bourne*, 666 F.3d at 414. "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Recent Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (*per curiam*).

The court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.* In the case of appellate counsel, petitioner has no constitutional right to have every nonfrivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Appellate counsel acts within the fair range of professional assistance when counsel chooses not to assert weak or unsupported issues on appeal. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). " 'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones v. Barnes*, 463 U.S. at 751-52). Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To overcome the presumption of

competence of appellate counsel in these circumstances, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.*; *see Bourne*, 666 F.3d at 411 (Petitioner "must show the issues his appellate counsel failed to raise were 'clearly stronger' than the issues his counsel did raise – and that the state court lacked a reasonable basis for believing otherwise.").

The only claim that petitioner now argues should have been raised on direct appeal is the ineffective assistance of trial counsel in pretrial proceedings. The trial judge rejected that argument for lack of evidence, as well as lack of proof of actual prejudice. The record discloses no pretrial error by trial counsel that would have provided appellate counsel with grist for a meritorious appeal. The unproven accusations of pretrial neglect were not clearly stronger than the issues his appellate counsel raised. Appellate counsel has no duty to raise meritless issues. *Evitts*, 469 U.S. at 394; *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993).

As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), and "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). Petitioner does not approach satisfying this demanding standard. I find that the state-court decision rejecting petitioner's claims of ineffective assistance of appellate counsel was not an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

## VII.    Cumulative Error

Petitioner's seventh claim for relief is that the accumulation of errors in the trial and appellate proceedings rendered his conviction fundamentally unfair.  This argument requires little discussion.  Under settled Sixth Circuit authority, a claim that the cumulative effect of errors rendered a trial fundamentally unfair is "not cognizable" after AEDPA.  *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011); *Moore v. Parker*, 425 F.3d 220, 256 (6th Cir. 2005); *accord Henshaw v. Berghuis*, 469 F. App'x 418, 422 (6th Cir. 2012).  Petitioner's seventh claim therefore fails to state grounds for habeas corpus relief.

## VIII.    Sufficiency of the Evidence To Support First-Degree Criminal Sexual Conduct Conviction

Petitioner's last claim for relief is that the "evidence presented at trial was insufficient to sustain the finding of guilt beyond a reasonable doubt on the offense of criminal sexual conduct as to defendant Evans' conviction against Brenda Nuby."  (docket # 1-2, ID# 26).  Petitioner was convicted under Mich. Comp. Laws § 750.520b(1)(e), which provides that "[a] person is guilty of criminal sexual conduct if he or she engages in sexual penetration with another person" and "is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon."  MICH. COMP. LAWS § 750.520(b)(1)(e); *see People v. Brantley*, 823 N.W.2d 290, 293 (Mich. Ct. App. 2012); *People v. Smith*, 340 N.W.2d 855, 857 (Mich. Ct. App. 1984).  "To show a defendant [was] 'armed,' the prosecution must prove either actual or constructive possession of a weapon."  *People v. Horton*, No. 290009, 2010 WL 624888, at * 3 (Mich. Ct. App. Feb. 23, 2010); *see People v. Proveaux*, 403 N.W.2d 135, 137-38 (Mich. Ct. App. 2000).

Petitioner challenged the sufficiency of the evidence supporting his first-degree criminal sexual conduct conviction under the *Jackson v. Virginia* standard. (docket # 1-2, ID#s 87-99). He argued that the victim, Ms. Nuby, was not credible and that the jury should have believed his testimony that he was not armed with a weapon and that the sexual encounter had been consensual. On motion for post-judgment relief, the trial court held that the evidence was sufficient to support petitioner's conviction. (6/21/06 Order, found in Michigan Court of Appeals record, docket # 29). Thus, the deferential standards discussed in section II of this report and recommendation apply. Ms. Nuby's testimony (TT IV, 8-11, docket # 35) was more than sufficient to support the jury's verdict finding petitioner guilty of first-degree criminal sexual conduct. *See People v. Parrish*, No. 303746, 2012 WL 5853970, at * 1-2 (Mich. Ct. App. Nov. 8, 2012) (the victim's testimony that defendant possessed a knife and that he forced her to perform fellatio was sufficient evidence to support the jury's verdict finding defendant guilty of first-degree criminal sexual conduct). Petitioner has not shown that the state-court decision upholding the sufficiency of the evidence was an unreasonable application of the *Jackson v. Virginia* standard. *See Parker v. Matthews*, 132 S. Ct. at 2152 (state-court decision rejecting a sufficiency challenge may not be overturned unless objectively unreasonable). Petitioner's challenge asks the court to reject Nuby's testimony on credibility grounds, an issue not cognizable on habeas review.

**Recommended Disposition**

The evidence against petitioner was overwhelming, and his habeas corpus claims lack substance. I recommend that the habeas corpus petition be denied on its merits.


Dated:   April 29, 2013                                   /s/  Joseph G. Scoville
                                                          United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).